UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20628-CR-GRAHAM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MYRA RODRIGUEZ,                <u>REPORT AND RECOMMENDATION</u>

    Defendant.
_____/

On or about June 8, 2010, court-appointed defense counsel Israel J. Encinosa ("Counsel") submitted a voucher application numbered FLS 09 2571 with appended time sheets requesting $136,989.50 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied time sheets and a brief letter of explanation dated June 8, 2010 (the "Letter of Explanation") in support of his voucher application. Counsel represented Defendant Mayra Rodriguez ("Defendant") for nine (9) months from his appointment on August 5, 2009 until April 27, 2010.

Counsel seeks $136,989.50 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge Donald L. Graham entered an Order of Reference **[DE # 879]** referring the voucher application to the undersigned for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. *See* 28 U.S.C. § 636(a); *see also* United States District Court for the Southern District of Florida Magistrate Judge Rules.

## Criminal Justice Act and Guidelines for Administration
## of the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administration of the Criminal Justice Act (the "Guidelines") to assist courts in the application of the provisions of the CJA. See *In re Burger,* 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." See Section §6.02(B) of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); *U.S. v. Griggs,* 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. See Section §2.22B(3) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

## DISCUSSION

### This Case Was Complex

Under the Guidelines, in order to approve compensation in an amount in excess of the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. This case commenced when the grand jury issued an Indictment **[DE # 3]** naming Defendant and eighteen (18) co-defendants.

The Indictment contained twenty (20) counts. The government alleged that Defendant and the codefendants were involved in a mortgage fraud conspiracy scheme to recruit straw buyers to purchase residential properties. The purpose of the scheme was to obtain money from various banks and lending institutions to finance the purchase of the properties through materially false representations and fraudulent pretenses concerning the true purchasers of the homes.

The scheme required the straw buyers to pose as home buyers when, in fact, the straw buyers were not to be either the true owners of the homes or responsible for making the monthly mortgage payments. Rather, other unnamed third persons were to be the true owners of the properties. In the scheme, the straw buyers would purchase the homes at highly inflated prices by obtaining mortgages on the properties. The true owners of the properties would fail to make payments on the mortgages and default on the loans. The various banks and lending institutions would be forced to foreclose on the properties,

suffering large losses.

The government charged Defendant with conspiracy to commit mail and wire fraud, mail fraud and wire fraud.  Defendant faced a maximum sentence of twenty (20) years imprisonment for Count I and twenty (20) years imprisonment for each of Counts III and XI.

Second, this case was extremely document intensive.  The case involved "over 35 banker boxes of loan and bank documents." (Letter of Explanation at 1).  The volume of documents which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to attend a number of hearings and status conferences in this case.  Plaintiff made appearances at an arraignment hearing (8/5/09), two motion hearings (1/19/10 and 1/26/10) and a telephone hearing (2/12/10).  Counsel argued at these hearings in addition to appearing at a calendar call (2/10/10) and five status conferences (9/4/09, 10/7/09, 11/4/09, 12/16/09, 1/13/10 and 2/10/10).

Fourth, this case was more complex than the average case because Defendant pled not guilty and proceeded to trial.  The trial lasted approximately 7 weeks, taking place from February 16, 2010 through April 7, 2010.  The case ended in a mistrial. **[See DE # 666]**.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case.  As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for 201.9 in-court hours totaling $25,159.50.

The CJA administrator made no changes to the in-court hours listed in the voucher. The CJA administrator also reviewed the 941.5 out-of-court hours sought by Counsel. Counsel sought compensation for 88.9 hours for "Interviews and conferences" and 720 hours for "Obtaining and reviewing records." Counsel also sought compensation for 132.6 hours for "Investigative and Other work."

The CJA administrator made one change to the out-of-court hours listed in the voucher. The CJA administrator decreased the total number of hours sought by Counsel for "Obtaining and reviewing records" from 720 hours to 717 hours. Counsel sought no compensation for expenses. After making the adjustment described above, the CJA administrator concluded that the overall total amount documented by Counsel in the voucher decreased slightly from $136,989.50 to $136,614.50.

### **In-Court Hours**[1]

Counsel sought 201.9 in-court hours totaling $25,159.50. Again, the CJA made no change to these figures. I approve the amount of $25,159.50 as reasonable.

---

[1] The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

## Out-of-Court Hours

In the voucher, Counsel sought 720.0 out-of-court hours. The CJA administrator reviewed the voucher and slightly decreased the total number of out-of-court hours to 717.0 for a total of $111,455.00 (from $11,830.00). I approve this reduction.

In initially reviewing Counsel's voucher application, I was immediately struck by the extremely large number of out-of-court hours billed by Counsel. Further, Counsel's voucher was replete with entries for out-of-court hours that were so unspecific that the undersigned could not determine the purpose of the entries. Counsel's voucher contained the following entries, for example:

| Entry | Hours |
|---|---|
| REV - DE 24 TO 139 | 0.7 HOURS |
| US V. CRUZ BOA 7029-293 (205 PAGES) | 2.5 HOURS |
| US V. CRUZ CITIM 7030 - 0006 (334 PAGES) | 3.3 HOURS |
| US V. CRUZ CLERK 7007-0001 (382 PAGES) | 3.8 HOURS |
| US V. CRUZ GMAC 7010-0027 (634 PAGES) | 6.3 HOURS |
| US V. CRUZ REGN 7065-0001 (893 PAGES) | 8.9 HOURS |
| US V. CRUZ USBK 7052-0001 (337 PAGES) | 3.3 HOURS |
| STATE 7571 - 0001 (333 PAGES) | 3.3 HOURS |
| REV. ARGT 4483 BOX 1 - 01174 (343 PAGES) | 3.4 HOURS |
| REV. CHL - 6355- 2107 (346 PAGES) | 3.4 HOURS |
| REV - FLAG - 7594-0002 (498 PAGES) | 4.9 HOURS |
| REV- FLNC - 6428 - 1288 (390 PAGES) | 3.9 HOURS |
| REV. FRMT - 6382-300-900 (600 PAGES) | 6.0 HOURS |

| | |
|---|---|
| REV. WILM 4477-3410 (368 PAGES) | 3.6 HOURS |

Counsel's voucher includes twenty-three (23) single-spaced pages of similarly vague entries. After reviewing the voucher, I requested that Counsel come to chambers to explain these vague entries. Counsel and I met and discussed my concerns regarding the significantly large number of vague entries included in the voucher.

Following our first meeting, I requested additional information from Counsel. Counsel provided little information about these entries, simply explaining that the records reviewed were "all documents provided by government as discovery in CD - disc", "all records provided by government in discs" and the like. Although Counsel also indicated the name of the entity from whom the documents came (i.e. Bank of America), this basic information gives the Court little information regarding the amount of time that Counsel was required to expend reviewing the particular documents listed in each entry.

The undersigned recognizes that this case was very document intensive, however, it appears that Counsel simply charged 0.01 hour for reviewing each page of discovery in this case. This is not appropriate. Accordingly, I asked Counsel to return to chambers to discuss the Court's remaining concerns for a second time.

During Counsel's second visit, Counsel displayed many of the documents on his laptop computer. It must be noted that some - although certainly not all - of the pages were blank or illegible or clerical documents such as fax cover sheets that did not require anything more than Counsel glancing at the page and moving onto the next document without pause.

Counsel has been most cooperative in trying to satisfy the Court's concerns regarding the very large amount of compensation he seeks for "Obtaining and reviewing documents". To his credit, Counsel understood the Court's concern and tried to justify the large number of hours sought in the voucher. To that end, Counsel tried to explain:

> Please note that my billing is probably higher than the billing submitted by the attorneys who represented other Co-Defendants. The reason for my billing being higher is because I represented the lead defendant, Mayra Rodriguez. Please note that my Client **was not** a straw-buyer with limited transactions. She was an actual employee who worked for several of Magile Cruz's corporations. . . . As the attorney for the main defendant, I also had the bulk of responsibility of cross examining the main government witnesses, including Magile Cruz. (Letter of Explanation at 1).

Counsel's explanation is certainly plausible, however, a review of the CJA vouchers submitted by five CJA lawyers who represented other defendants in this case reveals that Counsel's voucher application dwarfs the amounts sought by these other lawyers. Considering only the out-of-courts hours sought by Counsel, the amount of compensation Counsel seeks for out-of-court hours in his voucher request is nearly twice the amount sought by the second highest billing CJA lawyer in this case.[2] What is also striking to the undersigned is the breakdown of the out-of-court hours sought by Counsel by category.

---

[2] Counsel requested 941.5 out-of-court hours totaling $111,830.00, while the other CJA counsel with the second highest number of out-of-court hours was counsel for defendant Carlos Rodriguez, who sought 522.7 out-of-court hours totaling $62,433.50. This represents a difference of nearly $50,000.00. It is worth noting that the other CJA lawyers involved in this case sought significantly lower amounts for out-of-court hours than Counsel: counsel for Yamile Segurola sought 508.1 hours totaling $61,186.00; counsel for Ricardo Segurola sought 458.6 hours totaling $56,006.50; counsel for Lucia Peluffo sought 423.8 hours totaling $53,232.00 and counsel for Alejandro Rabelo sought 273 hours totaling $33,363.50.

Counsel spent the vast majority of his time, 720 hours, "Obtaining and reviewing records" and spent absolutely no time - not even one hour - performing "Legal research and brief writing." By contrast, one CJA lawyer spent 293.6 hours performing "Legal research and brief writing" and only 153.5 hours "Obtaining and reviewing records." The other CJA lawyers involved in this case also sought significantly less time "Obtaining and reviewing records than Counsel": counsel for Alejandro Rabelo sought only 158.9 hours, counsel for Lucia Peluffo sought 191.5 hours, counsel for Ricardo Segurola sought 205 hours and counsel for Carlos Rodriguez sought 212.6 hours. Again, by contrast, Counsel sought more than three times more than counsel for Carlos Rodriguez - the CJA lawyer seeking the second highest amount of time for "Obtaining and reviewing records."

I recommend that Counsel should be compensated for 425.2 hours for "Obtaining and reviewing records." This number is twice the number of out-of-court hours sought counsel for Carlos Rodriguez who had the second highest amount of hours listed for "Obtaining and reviewing documents" in this case (212.6 hours). Upon review of the docket and file in this case as well as Counsel's voucher application and his explanations concerning the out of-of-court hours included in the voucher, I conclude that my reduction of the number of hours Counsel sought for "Obtaining and reviewing records" from 720 hours to 452.2 hours results in fair compensation for Counsel.[3] I find, however, that the remaining out-of-court hours sought by Counsel (as adjusted by the CJA administrator) in the other categories in the

---

[3] The United States Court of Appeals for the Eleventh Circuit has explained that "[w]here fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir. 1994). Accordingly, I will not undertake an hour-by-hour review of the 720 hours Counsel seeks for "Obtaining and reviewing records."

voucher application are appropriate.[4] Making this reduction explained above, I recommend that Counsel be paid a total of $77,410.00 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar*, 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted).  As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono.  The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz*, 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale*, 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $77,410.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

---

[4]

Initially, I was also troubled by the hundreds of vague entries Counsel included simply listing "CONFS. CO-COUNSELS" or "TEL.CONF.P.I." I required that Counsel explain each and every one of these entries as required by the Guidelines and the Supplemental Instructions.  (The "Supplemental Instructions for Completing CJA20 Vouchers" form provided by the Court makes clear that "[t]elephone conferences in excess of one tenth (0.1) hour require notation of reason for duration, and parties to conversation identified.")  Upon my request, Counsel provided a detailed explanation for each conference and I recommend that Counsel be compensated for these entries.

## CONCLUSION

I commend Counsel for his willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. As I explained above, however, because the the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the June 8, 2010 Letter of Explanation, the docket and filings in this case, I RECOMMEND that Counsel be paid $102,569.50 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Donald L. Graham, United States District Judge.

Signed this 3rd day of December, 2010.

**PETER R. PALERMO**
**SR. UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
    Israel J. Encinosa, Esq.
    Lucy Lara, CJA administrator